## Commonwealth *v.* Musser, Appellant.

Submitted September 17, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

270

*James S. Sorrentino,* Assistant Public Defender, for appellant.

*D. Richard Eckman,* Assistant District Attorney, and *Clarence C. Newcomer,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAULDING, J., December 13, 1971:

Appellant, Gerald Musser, plead guilty to charges of conspiracy, assault with intent to kill, and robbery in November 1967. He now asserts that his plea was invalid because it was coerced by the treatment he received while awaiting trial in the Lancaster County Prison.[1]

Appellant alleged in his post-conviction petition and at the hearing before Judge W. Hensel BROWN that during the three weeks[2] following his arrest he was held in a maximum security cell, he was denied commissary privileges, he was not allowed to eat with

---

[1] In response to appellant's petition for post-conviction relief, the Court of Common Pleas granted appellant the right to file an appeal nunc pro tunc. On appeal, this Court affirmed the judgment of sentence of the court below, 214 Pa. Superior Ct. 128, 251 A. 2d 664 (1969). The Supreme Court thereafter granted appellant's petition for allocatur and remanded the matter to the Court of Common Pleas of Lancaster County for an evidentiary hearing to determine whether the entry of the guilty plea was voluntary. 437 Pa. 131, 262 A. 2d 678.

[2] Appellant was incarcerated 52 days in all from arrest to the entry of his guilty plea.

the other prisoners, his exercise was limited to fifteen minutes per day within the cell block, he had no table on which to eat or write, he was issued only one shirt and trousers to wear and sleep in, he was not permitted to shower, and a 100 watt bulb burned constantly in his cell 24 hours per day. He further testified that even though some of these conditions were abated following the filing of a petition for writ of habeas corpus in the Common Pleas Court and an application for relief in Federal District Court, his guilty plea was a direct result of his desire to escape the conditions outlined above.

Appellant's pre-trial counsel, testifying for the Commonwealth, stated that, although appellant had complained several times about the conditions of his incarceration, had said on a few occasions that he would do anything to get out of the County prison, and had to be dissuaded from leaving his name on the guilty plea list several times, he was convinced that appellant's plea was voluntary. He based his determination on appellant's statement that he wanted to get the uncertainty over with and make the Constitution his defense, and on appellant's insistence on entering his plea despite counsel's advice that it was not the appropriate time to plead guilty and despite his assurance that he would take steps to have appellant moved to another institution if his plea was motivated by the conditions under which he was being incarcerated.

The prison warden testified that he ordered that appellant be placed in a maximum security cell because of his past record, because of the seriousness of the charges on which he was being held, and because certain of appellant's accomplices had threatened to attempt to escape. He further stated that although some of appellant's complaints were valid, in general appellant received treatment on a par with the other

pre-trial inmates, and that improvements had been made in appellant's custodial conditions to the extent that the age of the facility and the shortage of personnel allowed.

On the basis of the above summarized evidence, the court below found that appellant's plea was entered voluntarily, and denied the petition. This appeal followed. Although we in no way endorse or condone the treatment to which appellant was subjected, we must affirm the finding of the court below.

There was extensive colloquy between appellant and the trial judge as to voluntariness, and specifically as to whether the conditions of appellant's incarceration had motivated the plea. Therefore, under both pre- and post-*Commonwealth ex rel. West v. Rundle*[3] standards, the burden was upon appellant to prove that his plea was not voluntarily entered. *Commonwealth v. McBride*, 440 Pa. 81, 269 A. 2d 737 (1970); *Commonwealth v. Simpson*, 434 Pa. 439, 254 A. 2d 306 (1969). We recognize that appellant was aware at the time of his plea that had there been any intimation on his part that the prison conditions influenced his decision to plead, his plea would not have been accepted. Nevertheless, the burden remains his to prove the inaccuracy of his prior statement. In light of appellant's burden and the quantum of evidence presented at the post-conviction hearing, we find no abuse of discretion in the factual finding of the court below that the plea was voluntarily entered. *Commonwealth v. Hill*, 427 Pa. 614, 235 A. 2d 347 (1967). See *Commonwealth v. McBride*, supra. Thus, the only way relief could be granted on appellant's requests would be to find as a mat-

---

[3] 428 Pa. 102, 237 A. 2d 196 (1968). For purposes of pleas entered after the date of this case, where the record is silent, the burden switches to the Commonwealth to prove the voluntariness of the plea when challenged collaterally.

ter of law that the conditions of appellant's incarceration were such as would overbear the will of the normal individual.[4] *Reck v. Pate,* 367 U.S. 433, 81 S. Ct. 1541 (1961) ; *Commonwealth ex rel. Donnell v. Myers,* 208 Pa. Superior Ct. 57, 220 A. 2d 376 (1966). We are not convinced that the conditions here reached that magnitude.

Appellant analogized the instant situation to that in *Commonwealth ex rel. Donnell v. Myers,* supra, where this Court found the conditions so abominable as to be "sufficient to destroy the will power of almost any human being" (p. 61). In that case, the defendant was held for eleven days in solitary confinement and was forced to live on bread and water and an occasional bowl of soup. "He was handcuffed and chained to an iron bar on the wall . . . his movement was limited to the distance between his bunk and the toilet. The cell had no windows, was unlighted and cold. Relator could not wash or shave" (p. 60). At the end of eleven days of this treatment, the defendant signed a confession.

Except for twice daily for periods of from 15 to 30 minutes, when a wooden door was placed over the strap iron door of appellant's cell, appellant was able to converse with other inmates across the corridor of the cell block. He had library and commissary privileges. Shortly after his attorney filed petitions for reliefs in the Common Pleas and Federal District courts, appellant was afforded daily showers, and was exercised outside, weather permitting, and rheostats were installed so that the lighting in his cell could be turned up during the day and dimmed at night. In effect, by the time of appellant's plea, there had been improvements in

---

[4] The court below provided us with little guidance in the way of specific findings as to the nature of appellant's conditions of incarceration.

nearly all the conditions of which he had complained, with the exception of not being allowed to mingle with the other prisoners. Under such circumstances, we do not think the law requires that the plea be invalidated.

This opinion is by no means an endorsement of the kind of treatment appellant was forced to undergo. We shall not allow concern over security and the problems created by inadequate facilities and personnel shortages to be a facile excuse for punishment of individuals prior to trial, for endangering the physical and mental health of inmates, and for shortchanging, if not undermining the rehabilitative function that modern standards of humaneness require that prisons serve. However, our concern for prompting prison reform can be no substitute for the facts and issues in this case.

The order of the court below is affirmed.